Gleason *v.* Allen et al.

HENRY C. GLEASON *v.* GEORGE S. ALLEN AND JOHN R.
STAFFORD.

AND

THE SAME PLAINTIFF *v.* GEORGE S. ALLEN.

*Contract.*

The defendants A. & S. contracted with the plaintiff and several others jointly interested
with him in building certain masonry, to quarry and furnish for them the necessary stone;
and at the same time the plaintiff and one of his associates, since deceased, who was and
had been a partner with him in selling goods, agreed with the defendants that the account
which had then accrued against one of them, and whatever account should thereafter
accrue against him or against both defendants, should apply on the stone contract, and
be paid for in stone to be furnished under it. The defendants entered upon the perform-
ance of the stone contract, but failed to complete it, without fault on their part, but in
consequence of a breach of it by the other party. *Held* that the plaintiff could not re-
cover for the account that accrued after, but that he might for that which had accrued
before the agreement was made.

The agreement as to the previous account was only an accord without satisfaction.

BOOK ACCOUNT. Both actions were referred to the same
auditor, who reported, in each case, substantially the same facts,
which were as follows:

On the 28th day of February, 1848, the plaintiff, Henry C.
Gleason and one William B. Brown, then in life, but since de-
ceased, were partners in the business of conducting a country retail
store, at Cuttingsville, under the name of Brown & Gleason, and
had been from before the 29th of October, 1846; and the same
Brown and Gleason, together with one John Reed and Loring C.
Frost, were, on said 28th of February, 1848, co-partners in the
business of constructing certain portions of the Rutland & Burling-
ton railroad, and as such were associated under the name of Reed,
Brown & Co.; and James Huntoon and William C. Dow were also
partners between themselves, in the business of constructing cer-
tain portions of said railroad, and as such were associated under
the name of Huntoon & Dow. On the same 28th day of Februa-
ry, the several parties above-named, under the respective names
of Reed, Brown & Co., and Huntoon & Dow, of the one part, en-
tered into a parol agreement with the defendants, of the other part,
that the said Allen & Stafford should quarry and furnish a certain
amount of stone from certain specified quarries for certain masonry,
to be done upon said railroad, which agreement was afterwards

reduced to writing, dated March 18, 1848, and signed by the respective parties, except said Gleason; but he had an equal interest in said contract with Brown, claimed its advantages and recognized its obligations, and was at all times ready to sign it, and omitted to do so only through inadvertence or lack of opportunity.

It was the mutual understanding of the said Brown & Gleason and Allen & Stafford, on the 28th day of February, 1848, and a part of the parol agreement, then made, and was their mutual understanding and agreement down to the close of the plaintiff's account, that whatever account had already accrued in favor of Brown & Gleason against said Allen previous to February 28, 1848, and whatever should thereafter accrue against either said Allen or Allen & Stafford, should apply upon said stone contract, and be paid for in stone, to be furnished under it by the said Allen & Stafford; and that, relying upon such understanding and agreement, the defendant Allen and the defendants Allen & Stafford did procure and receive from Brown & Gleason the several articles charged in the plaintiff's account at the prices therein charged, after and including the charges under date of February 28th, 1848; and after the date of said written contract, the plaintiffs requested the defendant Allen to get goods and trade at the plaintiff's store, and then assured him that whatever he should so trade, and also the amount which stood against him previous to the making of said stone contract, should apply upon said stone contract, as above stated; and the defendant Allen relied upon such assurance, and procured the goods thereafter charged to him in faith of such assurance.

In pursuance of said written agreement, the said Allen & Stafford went on and opened the quarries named in it, and procured and furnished some stone therefrom, which were taken and used by said Reed, Brown & Co., and Huntoon & Dow, and incurred an expense in necessary preparations for performing said agreement on their part, to an amount exceeding the whole of Brown & Gleason's demands against the defendant Allen and against Allen & Stafford; and after the accruing of said accounts, and while Allen & Stafford were going on in the proper performance of the agreement on their part, said Brown informed them that Reed, Brown & Co. and Huntoon & Dow were procuring stone in an-

other place, and that they should take no more stone from them.

The said Allen & Stafford then had a considerable quantity of stone, quarried under said contract, which Reed, Brown & Co., and Huntoon & Dow were bound, under the contract, to receive; but which they did not nor would receive; and soon after such notice from said Brown, the said Allen & Stafford ceased work under said contract, but they were ready and willing to perform said contract on their part, and pay for all said goods, and the account of the defendant Allen which accrued previous to February 28th, 1848, in the manner agreed; but were prevented by the said Brown, as before stated, acting in behalf of himself and his associates in said contract, without fault on the part of the said Allen & Stafford.

Upon these facts the auditor disallowed both the account against Allen and against Allen & Stafford, but reported that the account against the defendant Allen which accrued before February 28th, 1848, was with interest to April, 1854, $106.35.

Upon the reports, the county court, March Term, 1854,— PIERPOINT, J., presiding—rendered judgments for the defendants. Exceptions, in each case, by the plaintiff.

*E. Fisher* and *S. Fullam* for the plaintiff.

*D. E. Nicholson* and *C. L. Williams* for the defendants.

In the suit against Allen & Stafford the following opinion was delivered by

BENNETT, J. The material facts, in the report of the auditor are, that the plaintiff and one Brown, now deceased, in February, 1848, were partners in trade, and had been for some time before; and they and one Reed & Frost on the 28th day of February, 1848, became partners in a railroad contract on the Rutland & Burlington railroad. Huntoon & Dow were also partners for the construction of another section of the same railroad; and on the same 28th day of February, 1848, these two companies who had the railroad contracts in their respective names, made an agreement with the defendants to quarry and furnish for them a given amount of stone from specified quarries for certain masonry which they

had engaged to do in their contracts with the railroad company; and on the 18th day of March, 1848, this contract was reduced to writing, and signed by all the parties, except Gleason, who inadvertently omitted to sign it; and on the same day that the contract was first made, that is, on the 28th day of February, 1848, the auditor finds that it was the mutual understanding between Brown & Gleason, the partners in the store, and the defendants, and continued to be their understanding down to the close of the account now sued for, that whatever account should accrue against the defendants for goods out of the store of Brown & Gleason should apply on the stone contract, and be paid for in stone, by Allen & Stafford, furnished by them, in pursuance of their contract; and that, relying upon this agreement, the defendants took up the goods in question from the store of Brown & Gleason.

The defendants under their contract went on and opened the quarries and furnished stone for the two contracting parties; some of which had been received; and while the defendants were going on and getting out stone, Brown, in behalf of the two companies who had contracted with the defendants, gave them notice that they were getting stone in another place, and that they should take no more from them; and at this time the defendants had a considerable quantity of stone quarried, which the two companies were bound to take, and which they refused to do; and that the defendants, though willing to perform on their part, yet by reason of the breach of the contract on the other side, left the quarry, and without fault on their part. The auditor also finds that, the defendants in opening the quarry incurred an expense greater than the whole of Brown & Gleason's account against them or either of them.

The written contract provides that the defendants shall be paid for three-fourths of the stone monthly, and the balance when the whole shall have been quarried and approved by the engineer of the company.

There was a clear breach of the contract with the defendants; and they might have had a full indemnity in damages by an action; but the important inquiry is, can they use that contract and a breach of it, as a defense in this action? That must depend upon what we consider the contract for the sale of the goods by Brown & Gleason to the defendants to be. If it was a mere advance by

them, as partners, of so much on the stone contract with the defendants, and which would enure to the joint benefit of Brown & Gleason and Reed & Frost, the party to the stone contract, the judgment should be for the defendants. Brown & Gleason saw fit to trust to the fund; and it has not been the fault of the defendants that it has not been made more available. Indeed there was a refusal to take the stone. Had it not been for this, no doubt the contract would have been performed by the defendants, and Brown & Gleason would have had their claim for so much as they had advanced in goods on the stone contract against the partnership, composed of themselves and Reed & Frost.

The delivering of the goods by Brown & Gleason to the defendants did not create a subsisting contract against them.

The auditor finds that, they were to apply on the stone contract, and be paid for in stone. The case in principle is much like the case of *Fay et al.* v. *Green.* 1. Aik. 71. 2. Aik. 386.

If the firm of Reed, Brown & Co. had made, to the defendants, payments in goods, as advances on their stone contract, they could not set up a claim to recover for the advancements; because they had, without the fault of the defendants, repudiated the contract and refused to receive the stone. To enable them to do this, would be to enable them to take advantage of their own wrong. Brown & Gleason, being two of the partners of Reed, Brown & Company, had the right to make advances to the defendants in behalf of the firm, if they thought proper, to be applied on their stone contract; and they should take the risk of the action of their own firm relative to the contract, rather than the defendants; and if the company repudiated the contract and wrongfully refused to receive the stone, that is a poor reason why Brown & Gleason should have life infused into their claim for goods advanced to the defendants; and drive them over to an action against Reed, Brown & Company for their damages, which might prove wholly unproductive.

The judgment of the county court is affirmed.

At the circuit session, in September, the following opinion, in the suit against Allen alone, was delivered by

BENNETT, J. A portion of the plaintiff's claim stands substantially upon the same statement of facts as the claim of the plaintiff in his suit against Allen & Stafford, and must follow the same result; and it is not necessary to repeat what is there said. But so far as it relates to that portion of the plaintiff's account for goods sold and delivered by Gleason & Brown to the defendant before Allen & Stafford entered into the contract to quarry stone, the case seems to stand upon different ground. Those goods were sold and delivered to the defendant in the usual course of business; and a valid and legal claim was created against the defendant, which could be enforced in a court of law; and the question is, how is that right of action satisfied or barred? It is true that, when the stone contract was entered into, there was an agreement with the defendant that if he would continue to trade with Brown & Gleason, not only the goods which the defendant had then taken up, as well as those which he should thereafter take up, should be applied on, and satisfied by, the stone which Allen & Stafford should deliver under their contract; and the auditor finds that the defendant went on and took up goods, relying upon having the old account, as well as the new one, satisfied in the way specified; yet so far as the old account is concerned, the contract was executory, and has never been executed by the delivery of the stone. It is nothing more than an accord without satisfaction. In pleading a plea of accord and satisfaction, it should appear that the plaintiff has been fully satisfied by the performance of the defendant's part of the agreement. See 1 Steph. N. P. 391, Title, Assumpsit, and cases there cited. In the present case, if assumpsit had been brought for the old account, the facts would not have warranted such a plea; and the fact that Reed, Brown & Co. had repudiated the stone contract, and refused to take the stone from Allen & Stafford, would not excuse a performance, when it is sought to make this agreement a bar to a then existing cause of action. The defendant must take his remedy in this case, so far as he has a claim for damages, in being compelled to pay the old account in cash, for a breach of the agreement. In *Strong* v. *Fish*, 13 Vt., 277, it was held that an agreement with the deceased partner of Strong, that what services

25

had already been rendered the defendant, as well as what the firm should thereafter render him, should be applied upon a private demand which he held against the deceased partner, did not bind the firm as to the past services.

We then think the judgment of the county court should be reversed, and judgment for the plaintiff for the old account, that is, for $106.35 and interest on it from April 1854.